IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


CARI SUE BAUMANN                                                    PLAINTIFF


        v.                            CIVIL NO. 11-5034


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                              DEFENDANT


## MEMORANDUM OPINION

        Plaintiff, Cari Sue Baumann, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

## I.      Procedural Background:

        Plaintiff protectively filed her current applications for DIB on March 6, 2008, alleging

an inability to work since December 31, 2004, due to fibromyalgia, irritable bowel syndrome,

anxiety, migraines, pelvic inflammatory disease, and adult attention deficit disorder (ADD). (Tr.

69).  An administrative hearing was held on June 1, 2009, at which Plaintiff appeared and

testified. (Tr. 374-400).  Plaintiff acknowledged at the hearing that she understood that she could

obtain an attorney to represent her, but she chose to proceed on her own.

By written decision dated November 23, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 38). Specifically, the ALJ found Plaintiff had the following severe impairments: headaches, a major depressive disorder, and a generalized anxiety disorder. (Tr. 38). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 39). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift/carry 20 pounds occasionally and 10 pounds frequently, sit for six hours and stand/walk for six hours. The claimant is further limited and has moderate restrictions in activities of daily living, social functioning and concentration, persistence and pace. The claimant is moderately limited in the ability to understand, remember and carry out detailed instructions, respond appropriately to usual work situations and routine work changes and interact appropriately with supervisors and coworkers. Moderately limited means there is more than a slight limitation but the person can function in a satisfactory manner. The claimant can do work in which interpersonal contact is incidental to the work performed, where complexity of tasks is learned and performed by rote with few variables and where little judgment is required. The supervision required is simple, direct, and concrete.

(Tr. 41). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a housekeeper, a small products assembler, and a poultry production worker. (Tr. 45).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence, denied that request on December 14, 2010.[1] (Tr. 1-5). The Appeals Council noted that Plaintiff had filed a subsequent application for disability in January

---

[1] We note we consider this evidence, as it was submitted to the Appeals Council and the Appeals Council considered it before denying review. See Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994)

-2-

of 2010, and that the application was approved with an onset date of November 24, 2009.  (Tr. 2).

Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 3).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 8,9).

## II.    Evidence Presented:

The administrative hearing was held before the ALJ on June 1, 2009.  (Tr. 374-400). Plaintiff testified that she had earned her Associate's Degree from a business college.  (Tr. 380). When asked why she stopped working, Plaintiff testified that she had fibromyalgia, pelvic inflammatory disease and irritable bowel syndrome which caused chronic pain.  Plaintiff's husband testified that when Plaintiff was working in retail, she was working long hours, and doing a lot of physical labor which left Plaintiff unable to function.  (Tr. 381).  Plaintiff testified that she could do all of the household chores, but she just could not do them every day.  (Tr. 392).

The medical evidence dated prior to the relevant time period revealed that Plaintiff sought treatment for stress, anxiety, ADD, and migraines.  (Tr. 136-137, 151-152, ).  In September of 2004, Plaintiff reported that, as long as she took her B12 shots, her migraines were controlled. (Tr. 152).  In November of 2004, Plaintiff was diagnosed with adult ADD and prescribed Adderall.  (Tr. 151).

Medical evidence from the relevant time period reflects the following.  An Office Visit dated February 27, 2006, reported that Plaintiff complained of experiencing a panic or anxiety

-3-

attack. (Tr. 150). Plaintiff also thought she might have a hiatal hernia. Plaintiff reported that she had fallen earlier in the day. Plaintiff was diagnosed with anxiety and prescribed Xanax.

Chart Notes dated October 6, 2006, reported that Plaintiff was in for a medication re-fill and a check-up. (Tr. 148-149). Plaintiff reported she would rather have Lorazepam over Xanax, because the Lorazepam worked better for her stress. Plaintiff reported she was under considerable stress, and that she was experiencing stress incontinence. Plaintiff reported that Detrol LA worked well for her incontinence. Plaintiff also requested a B12 injectable re-fill. Upon examination, Dr. Wm. Frank Webb noted that Plaintiff's neck was supple; her chest was clear; her heart was regular; her abdomen was soft with active bowel sounds; and her extremities were healthy. Dr. Webb noted Plaintiff's extremities had a good range of motion. Plaintiff was diagnosed with anxiety, and a poor libido. Plaintiff was prescribed Depo-Testosterone, Vitamin B12 and Lorazepam.

In an Office Visit Assessment dated December 1, 2006, Plaintiff was diagnosed with a poor libido. (Tr. 147). Plaintiff was prescribed Depo-Testosterone and Cyanocobalamin (Vitamin B12).

Chart Notes dated June 5, 2007, reported that Plaintiff was in for a medication re-fill and a check-up. (Tr. 145-146). Plaintiff also requested Xanax, as she had added stress lately and was experiencing anxiety attacks. Dr. Webb noted that Plaintiff was having "considerable stress at work." Upon examination, Dr. Webb noted that Plaintiff's neck was supple; her chest was clear; her heart was regular; her abdomen was soft with active bowel sounds; and her extremities were healthy. Dr. Webb diagnosed Plaintiff with anxiety/panic and prescribed Xanax.

-4-

Notations indicated Dr. Webb prescribed Lorazepam on September 11, 2007, and Xanax on September 17, 2007, and November 6, 2007.  (Tr. 145).

Chart Notes dated December 3, 2007, reported that Plaintiff was in for a medication re-fill. (Tr. 143-144).  Plaintiff also reported that she wanted to lose weight.  Upon examination, Dr. Webb noted that Plaintiff's neck was supple; her chest was clear; her heart was regular; her abdomen was soft with active bowel sounds; and her extremities were healthy.  Plaintiff agreed to follow a 1000 calorie diet, to walk thirty minutes a day at least, and to keep a food diary for two weeks.  Plaintiff was prescribed Fastin.

Chart Notes dated December 17, 2007, reported Plaintiff's complaints of right upper quadrant pain.  (Tr. 141-142).  Plaintiff reported the pain began after she ate some peanut butter and raw peanuts.  Plaintiff reported that she thought it was a bladder infection and had started taking Doxycycline. After examining Plaintiff, Dr. Webb diagnosed Plaintiff with cholecystitis[2] and prescribed Doxycycline and Dilaudid.  Dr. Webb noted Plaintiff might be considered for a gallbladder ultrasound.

Chart Notes dated January 4, 2008, reported Plaintiff had not done well on her weight loss, but it was noted that this was during the holidays.  (Tr. 139-140).  Plaintiff also reported a flare-up of her cholecystitis with bloating and right upper quadrant pain.  Plaintiff thought she had passed a small gallstone.  After examining Plaintiff, Dr. Webb assessed Plaintiff with weight control and cholecystitis.  Plaintiff was prescribed Fastin and was asked to return in thirty days.

---

[2] Cholecystitis is defined as an inflammation of the gallbladder. See Dorland's Illustrated Medication, Dictionary at 354, 31st Edition (2007).

-5-

On January 29, 2008, treatment notes indicated that Dr. Webb prescribed Xanax for Plaintiff.  (Tr. 139).

On April 16, 2008, Plaintiff presented to Dr. Webb's office complaining of having had a severe migraine headache.  (Tr. 203-204).  Plaintiff reported that her body pain had been diagnosed as fibromyalgia in the past, but she had applied for disability due to her headaches. Plaintiff reported she had headaches bi-monthly, and that she could not work when she had a headache. Dr. Webb noted that Plaintiff seemed hyperactive and very talkative. Dr. Webb noted that Plaintiff was emotionally labile with weeping and intermittent laughter.  Dr. Webb diagnosed Plaintiff with fibromyalgia and migraine headaches, and prescribed Dilaudid and Xanax.  Dr. Webb noted that Plaintiff had disability forms related to her headaches.

On April 16, 2008, Dr. Webb also completed a Migraine Headache Report.  (Tr. 153). Dr. Webb noted Plaintiff had a history of headaches in the right frontal area twice a month.  Dr. Webb noted Plaintiff was treated with narcotic medication, and that she experienced a good result. Dr. Webb opined that Plaintiff could not work when she had a headache.

On April 16, 2008, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Terry L. Efird.  (Tr. 158, 212).  Dr. Efird noted that when Plaintiff was asked about specific mental/emotional problems, Plaintiff began talking about her mother and her siblings' mental problems.  Plaintiff denied auditory or visual hallucinations.  Dr. Efird noted that Plaintiff did not respond straightforwardly to questions and that she looked to her husband for answers.  Dr. Efird noted that the evaluation was difficult to conduct and remarkable effort was required to obtain information.  Plaintiff reported experiencing excessive worry and endorsed feeling on the edge, being easily fatigued, sleep disturbance, muscle tension, and having mind problems which

-6-

she associated with her physical pain/fibromyalgia.  When asked about her mood, Plaintiff reported having problems coping, and then she talked about her mother who had died one month ago.  When Dr. Efird asked about her functioning within the past year, Plaintiff reported that it had been "pretty good," and Plaintiff reported that she helped care for her mother prior to her mother's death.  While Plaintiff had not sought treatment from a mental health professional for over twenty years, Plaintiff reported that her primary care physician started prescribing her Xanax about one year prior, which was also about the time that Plaintiff started taking care of her mother.  Plaintiff reported that she had taken other medication a few years ago for her anxiety that had helped.  Plaintiff reported she did not have the funds to seek consistent treatment.

Dr. Efird noted that Plaintiff's younger son lived with her older son, and that Plaintiff reported having remarkable difficulty with performing basic self-care tasks due to her physical difficulties.  Plaintiff reported that she had resigned from her last job due to difficulties with her new supervisor.  Dr. Efird noted that Plaintiff's degree of cooperativeness was difficult to determine; that Plaintiff's speech was quite rambling; and that Plaintiff reported an inability to count backward by threes.  Dr. Efird opined that Plaintiff functioned in the low average to average intellectual functioning level.  Dr. Efird diagnosed Plaintiff with a generalized anxiety disorder; a major depressive disorder, mild to moderate; and gave Plaintiff a GAF score of 50-60.

With regard to adaptive functioning, Plaintiff reported having the ability to drive and to shop "on a good day."  Dr. Efird noted that Plaintiff's husband, who was receiving disability, did the shopping if Plaintiff was not having a good day.  Plaintiff reported that she interacted with extended family on a daily basis.  Dr. Efird noted that Plaintiff reported having difficulty with activities of daily living due to physical impairments.  Dr. Efird noted that Plaintiff had the

-7-

capacity to perform basic cognitive tasks, and to complete tasks within an adequate time frame.

As for validity, Dr. Efird stated:

> Formal validity assessment techniques were not employed. I did have a question regarding the possibility of accuracy of reporting information. More specifically, claimant talked about having cared for her mother for a period of time. However, she also reported tending to stay in bed a great deal of the time. Claimant also wanted to talk about symptoms and diagnoses that her mother and siblings have reportedly received. Therefore, the reliability of the current findings may be compromised.

(Tr. 162).

On April 18, 2008, after reviewing all of the evidence of record, Dr. Jerry Thomas, a non-examining medical consultant, opined that Plaintiff did not have a severe physical impairment. (Tr. 156). Dr. Thomas noted the following:

> MER and ADL's more suggestive of mental overlay than an actual MDI. Non Severe.

(Tr. 156).

On April 23, 2008, Dr. Dan Donahue, a non-examining medical consultant, completed a Psychological Review Technique Form (PRTF) and opined that Plaintiff had a severe mental impairment. (Tr. 166-179). Dr. Donahue opined Plaintiff had moderate restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; and one or two repeated episodes of decompensation, each of extended duration. Dr. Donahue's notes stated:

> the current mental status examination diagnosed: Generalized anxiety disorder; major depressive disorder, mild to moderate. GAF = 50-60. Claimant's physical rating is "nonsevere". This claimant seemed capable of semiskilled types of work.

(Tr. 178).

-8-

On the same date, Dr. Donahue completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond appropriately to changes in the work place; and the ability to set realistic goals or make plans independently of others. (Tr. 180-183).

A prescription note dated April 28, 2008, from Dr. Webb noted the following:

Cari is prescribed Xanax for anxiety.
Ed is prescribed Adderall 30 mg, Percocet 5/315, for lumbar pain & arthritis
Sean is prescribed Adderall also.

(Tr. 205).

On June 17, 2008, Dr. Bill F. Payne, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry fifty pounds, frequently twenty pounds; could stand and/or walk for about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 186). Dr. Payne noted that postural, manipulative, visual, or communicative limitations were not evident. Dr. Payne opined that due to migraines,

-9-

Plaintiff should avoid even moderate exposure to hazards.  Dr. Payne made the following comments:

> 52 y/o clmt who has a dx of migraine hedaches [sic].  Rx MD headache form indicates clmt has 2 headaches per month.  No Frequent ER visits, etc.
> MED RFC with hazard restrictions.

(Tr. 193).

On June 19, 2008, after reviewing the evidence of record, Dr. Jay Rankin, a non-examining medical consultant, affirmed Dr. Thomas's opinion that Plaintiff did not have a severe physical impairment.  (Tr. 196).

On August 5, 2008, Plaintiff called Dr. Webb's office and requested a medication re-fill. (Tr. 201).   Plaintiff was prescribed Xanax.

On August 14, 2008, Plaintiff called Dr. Webb's office and requested a medication re-fill. (Tr. 200).  Plaintiff received her vitamin B12 and Xanax prescriptions.  (Tr. 201).

On September 29, 2008, Plaintiff called Dr. Webb's office and requested a medication re-fill. (Tr. 199).  Plaintiff's request was refused, and she was told an appointment was required. (Tr. 200).

On December 4, 2008, Plaintiff was seen in Dr. Webb's office complaining of anxiety and daily stress. (Tr. 198).  Plaintiff reported that she could not work without Xanax.  Treatment notes indicated Plaintiff had not been seen since April 16, 2008.  Upon examination, Dr. Webb noted that Plaintiff's neck was supple; her chest was clear; her heart was regular; and her abdomen was soft with active bowel sounds.  Dr. Webb diagnosed Plaintiff with anxiety, and prescribed Xanax.

-10-

On May 4, 2009, Plaintiff called Dr. Webb's office and requested a medication re-fill for her headaches. (Tr. 197).

On July 2, 2009, Plaintiff underwent a general physical examination performed by consultative examiner, Dr. C.R. Magness. (Tr. 206-211). Dr. Magness noted that Plaintiff's husband was present, and that her husband received disability secondary to lumbar issues. Plaintiff reported she had been her mother's care-giver until her mother died one year ago. Plaintiff reported she was unable to work due to nausea, abdominal cramps, cluster headaches, and chronic pain/fatigue. Dr. Magness noted Plaintiff also experienced situational anxiety/depression. Plaintiff's medications at that time were Xanax and Phenergan. Plaintiff reported she could walk one-fourth of a mile.

Upon examination, Dr. Magness noted that Plaintiff had problems with her range of motion of her extremities when she was experiencing symptoms secondary to her fibromyalgia. Dr. Magness noted Plaintiff was tender in her major joints and she had muscle weakness in her extremities. Plaintiff's gait and coordination were noted as "ok." Upon a limb function evaluation, Dr. Magness reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip 75% of normal on the right, 60% on the left; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel and toes; and to poorly squat and arise from a squatting position. Dr. Magness noted Plaintiff's past medical history consisted of a headache syndrome for 30 years; fibromyalgia for 20 years; irritable bowel syndrome for 20 years; pelvic inflammatory disease with chronic pelvic pain for 20 years; and adult ADD for ten years. Dr. Magness diagnosed Plaintiff with fibromyalgia with chronic pain and fatigue; cluster migraine headaches; irritable bowel syndrome; pelvic pain; adult ADD;

-11-

anxiety; and depression.  Dr. Magness opined that due to Plaintiff's chronic pain and fatigue, Plaintiff had moderate to severe restrictions with walking, standing, lifting, carrying and handling.

Plaintiff's counsel submitted the following medical evidence to the Appeals Council dated after the ALJ's decision. (Tr. 212-373).  This evidence revealed that in September of 2009, Plaintiff reported to Dr. Webb that she needed something to help her sleep.  (Tr. 302).  Plaintiff reported that the Xanax did not work, and that she had been controlling her symptoms with natural products, herbs, teas and baths.  Upon examination, Dr. Webb noted that Plaintiff's head, ears, eyes, nose, and throat were all healthy.  Dr. Webb noted that Plaintiff's neck was supple; her chest was clear; her heart was regular; and her abdomen was soft with active bowel sounds. Dr. Webb diagnosed Plaintiff with anxiety and prescribed Lorazepam.

On December 3, 2009, Plaintiff complained of sinus problems, total aches and pains, depression and weepiness.  (Tr. 308). Dr. Webb noted that Plaintiff's family reported that Plaintiff was "driving them crazy." At that time, Dr. Webb diagnosed Plaintiff with fibromyalgia, depression, and sinus inflammation.  Plaintiff was started on Celexa and Lyrica, and her Lorazepam dosage was increased.

The evidence submitted to the Appeals Council also reported that Plaintiff began seeking treatment with Ozark Guidance, Inc., on December 15, 2009.  (Tr. 217).  At that time, Plaintiff reported that her daughter had died nine years ago, and that she continued to have a lot of difficulty coping with her death.  Plaintiff reported that her spouse, who was noted to be receiving disability, was tired of being Plaintiff's care-giver, and was spending more and more time away from their home.  Plaintiff reported that her husband was no longer physically

-12-

attracted to her as she had gained forty pounds and only showered weekly. Plaintiff reported she had been the care-giver to her mother until her mother's death the previous year. Plaintiff reported that she had been diagnosed with fibromyalgia six years ago, and had increasing problems with dressing and performing activities of daily living. Plaintiff reported that her medications, prescribed by Dr. Webb, consisted of Lorazepam, Lyrica and Citalopram, and that they all made her nauseous. These records showed Plaintiff participated in therapy.

**III.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v.

-13-

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for

at least twelve consecutive months.

        The Commissioner's regulations require him to apply a five-step sequential evaluation

process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given her age, education, and experience.  See 20 C.F.R. § 404.1520.  Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42

(8th Cir. 1982); 20 C.F.R. § 404.1520.

**IV.    Discussion:**

        Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled.

Defendant argues substantial evidence supports the ALJ's determination.

**A.      Plaintiff's Impairments:**

        The ALJ found that Plaintiff had the following severe impairments: headaches, major

depressive disorder, and a generalized anxiety disorder.  However, the ALJ found that Plaintiff's

AO72A
(Rev. 8/82)

alleged fibromyalgia, pelvic inflammatory disease, irritable bowel syndrome, heart murmur, hypoglycemia, asthma, thyroid problems, and a gallbladder problem were not severe impairments.

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987).  The claimant, however, has the burden of proof of showing she suffers from a medically-severe impairment at Step Two.  See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

With regard to Plaintiff's fibromyalgia, the ALJ pointed out that while Plaintiff alleged an onset date of December 31, 2004, there was no mention of Plaintiff being diagnosed with fibromyalgia until April of 2008, when Plaintiff went to see Dr. Webb for her migraine headaches.  A review of the medical evidence revealed that in October of 2006, June of 2007, and December of 2007, Dr. Webb noted that Plaintiff's extremities were healthy.  In April of 2008, Plaintiff reported to Dr. Webb that while she had been diagnosed in the past with fibromyalgia, she had applied for disability due to her headaches.  The ALJ noted that Dr. Webb diagnosed Plaintiff with fibromyalgia in April of 2008, but the treatment notes failed to note any physical findings to support the diagnosis of fibromyalgia.  The record revealed that Plaintiff called in for medication re-fills for her anxiety, but Plaintiff did not report having chronic pain

-15-

when she called.  Plaintiff was seen by Dr. Webb in December of 2008, and failed to report her chronic pain, and Dr. Webb only diagnosed Plaintiff with anxiety at that time.

When addressing Plaintiff's fibromyalgia, the ALJ also addressed Dr. Magness's July of 2009 opinion that Plaintiff had fibromyalgia with chronic pain and fatigue.  In doing so, the ALJ noted that Dr. Magness's examination findings did not reflect standard painful tender points, only that Plaintiff had tenderness in her major joints.  A review of Dr. Magness's examination notes also indicated that Plaintiff reported to Dr. Magness that she had a medical history of fibromyalgia for 20 years; irritable bowel syndrome for 20 years; and pelvic inflammatory disease with chronic pelvic pain for 20 years, which, as noted above, is not supported by the evidence of record.

It is also noteworthy that after Plaintiff was examined by Dr. Magness in July of 2009, she was seen by Dr. Webb in September of 2009.  At that time, Plaintiff only complained of experiencing difficulty sleeping and that her Xanax was not working.  After examining Plaintiff, Dr. Webb diagnosed Plaintiff with anxiety and prescribed Lorazepam.  There is no indication that Plaintiff complained of chronic pain and fatigue at that time.  Thus, the Court finds that the ALJ properly determined Plaintiff did not meet her burden of demonstrating her alleged fibromyalgia impairment was severe during the relevant time period.

The ALJ also addressed Plaintiff's complaints of symptoms regarding pelvic inflammatory disease, irritable bowel syndrome, heart murmur, hypoglycemia, asthma, and a thyroid problem.  The ALJ noted that while Plaintiff reported experiencing problems regarding the above impairments to Dr. Magness in July of 2009, the record is devoid of any evidence revealing that Plaintiff complained of these impairments to her treating physicians during the

-16-

relevant time period.  With regard to Plaintiff's gallbladder, the record revealed Plaintiff was diagnosed with cholecystitis in December of 2007, and was prescribed medication at that time. The medical evidence failed to show Plaintiff sought treatment for gallbladder problems after January of 2008.  Based on the above, the Court finds that the ALJ properly determined Plaintiff did not meet her burden of demonstrating that her alleged symptoms regarding pelvic inflammatory disease, irritable bowel syndrome, a heart murmur, hypoglycemia, asthma, and a thyroid problem were severe during the relevant time period.

As for Plaintiff's alleged adult ADD, the ALJ noted that records dated in 2002 reported that Plaintiff was treated for a major depressive disorder and ADD. (Tr. 136-137). The ALJ also noted that in November of 2004, Dr. Webb prescribed Adderall for Plaintiff one time. (Tr. 151). However, in April of 2008, Dr. Webb reported that Plaintiff's husband and son were being treated for ADD, not Plaintiff.  (Tr. 205).  The ALJ also noted that when she was examined by Dr. Efird in April of 2008, Plaintiff did not mention a disability due to ADD, nor did Dr. Efird diagnose Plaintiff with ADD.  The ALJ also noted that Dr. Efird reported that Plaintiff completed most tasks assigned during the evaluation, except she denied the ability to perform serial threes; and that Plaintiff completed most activities within an adequate time frame.  The ALJ found that based on the lack of ongoing complaints of symptoms associated with ADD, Dr. Efird's evaluation findings, and the medical evidence that revealed Plaintiff was only treated for ADD for a very short period of time prior to the relevant time period, Plaintiff did not have a severe impairment with regard to Plaintiff's allegation of disability due to ADD.  After reviewing the record, this Court finds that the ALJ properly determined Plaintiff did not meet her burden of demonstrating her alleged ADD was severe during the relevant time period.

-17-

**B.      Subjective Complaints and Credibility Analysis**:

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that her impairments were disabling, the evidence of record does not support this conclusion.

With regard to Plaintiff's headaches, the ALJ noted that in September of 2004, Plaintiff reported to Dr. Webb that she had a history of migraine headaches that in the past had been controlled when she took monthly B12 shots.  See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir.1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling).  The ALJ pointed out that Plaintiff was prescribed B12 shots and there is no indication that Plaintiff sought treatment for headaches again until April of 2008, when Plaintiff returned to Dr. Webb's office complaining of bi-monthly headaches, and

-18-

requested that Dr. Webb complete a Migraine Headache Report. The ALJ noted that Dr. Webb prescribed Dilaudid at that time but stopped prescribing this medication by September of 2008. The medical record revealed that Plaintiff did not report experiencing headaches when she was examined by Dr. Webb in December of 2008.  Plaintiff did report experiencing headaches to Dr. Magness in July of 2009; however in September of 2009, Plaintiff failed to complain of migraine headaches when she was seen by Dr. Webb.  Based on the evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff did not have disabling migraine headaches during the relevant time period.

With regard to Plaintiff's anxiety and depression, the ALJ noted that during the relevant time period the medical evidence revealed that Plaintiff did not seek on-going and consistent treatment from a mental health professional.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).  The ALJ noted that during the relevant time period, Dr. Webb, Plaintiff's primary care physician, prescribed either Xanax or Lorazepam for her anxiety.  In discussing Plaintiff's anxiety, the ALJ noted that in April of 2008, Dr. Efird noted that while Plaintiff tended to ramble, he found Plaintiff was able to communicate in a reasonably socially adequate manner; that Plaintiff had the capacity to perform basic cognitive tasks; and that Plaintiff completed most tasks within an adequate time frame.  It is noteworthy that Dr. Magness indicated that Plaintiff was experiencing situational anxiety/depression when he evaluated Plaintiff in July of 2009.  After reviewing the entire record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

-19-

While Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily activities. The ALJ noted that in April of 2008, Plaintiff reported to Dr. Efird that she had been the care-giver to her mother until her mother's death in March of 2008. Plaintiff also reported in a Function Report completed in April of 2008, that she had helped her mother bathe, prepared her mothers meals, and helped with her mother's medication. (Tr. 85-92). Plaintiff reported she and her husband also helped with her mother's laundry and dishes. In this same Function Report, Plaintiff reported that she loved to work out in her yard, and that on a good day she would spend a couple of hours doing yard work with breaks. Plaintiff reported that she could prepare full meals on good days, and that she enjoyed reading and painting. Plaintiff reported that she and her husband liked to watch movies together, and that she enjoyed playing dress up with her granddaughters. Plaintiff reported that she could drive and go out alone but that she preferred to go with someone. The record also revealed that Plaintiff reported that she stopped working at her last job, not because of her impairments, but because she did not get along with her new manager. (Tr. 69). This level of activity belies Plaintiff's complaints of disabling pain and limitations and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application was supported

-20-

by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

With regard to the testimony of Plaintiff's husband, the ALJ properly considered his testimony but found it unpersuasive.  This determination was within the ALJ's province.  See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity during the relevant time period.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.    RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."

AO72A
(Rev. 8/82)

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform work at the light level with some limitations.

With regard to the opinions of Plaintiff's treating and examining physicians, the ALJ addressed Dr. Webb's April 16, 2008, opinion that Plaintiff could not work when she was experiencing a migraine headache.  As addressed above, the medical evidence does not support Plaintiff's allegations that she was experiencing bi-monthly migraine headaches.  A review of the medical record revealed that Dr. Webb mainly assessed Plaintiff with anxiety for which he prescribed medication.  Dr. Webb's treatment notes are not consistent with the form he completed in April of 2008 wherein, he found Plaintiff had bi-monthly headaches that rendered her unable to work.  Davidson v. Astrue, 501 F.3d 987, 990-91 (8th Cir. 2007) (finding ALJ correctly discounted a physician's assessment report when his treatment notes contradicted the report).  With regard to Dr. Magness's opinion, the ALJ found that Dr. Magness's diagnoses of fibromyalgia with chronic pain/fatigue, headaches, irritable bowel syndrome and pelvic pain were not supported by the record.  The ALJ found the RFC determination to be consistent with Dr. Magness's opinion that Plaintiff had moderate to severe limitations in walking, standing, lifting, carrying and handling.  This is incorrect, as the ALJ's RFC finding did not include such severe restrictions.  However, the record as a whole supports the ALJ's RFC determination, and the Court finds the ALJ properly addressed Dr. Magness's opinion.  Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000) (ALJ may reject the conclusions of any medical expert, whether hired by the

-22-

claimant or the government, if they are inconsistent with the record as a whole).  Furthermore, it is noteworthy that Dr. Webb, Plaintiff's primary care physician, never opined that Plaintiff had limitations with walking, standing, sitting, lifting, carrying or handling.  Based on the medical evidence, and Plaintiff's activities, which included carrying for her elderly mother up until her mother's death in 2008, the Court finds substantial evidence to support the ALJ's RFC determination.

### D.      Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled as she was able to perform work as a housekeeper, a small products assembler, and a poultry production worker.  See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### D.      Fully and Fairly Develop the Record:

Finally, the Court rejects Plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly, see Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir.2000) (ALJ must order consultative examination only when it is necessary for an informed decision), the record before the ALJ contained the evidence

-23-

required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 15th day of May 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)